IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHANCELLOR PROPERTIES, INC. et al. | : | CIVIL ACTION |
| v. | : | |
| HOUSTON CASUALTY CO. | : | NO. 09-4514 |

MEMORANDUM

Bartle, C.J.                                                  June 8, 2010

      Plaintiffs Chancellor Properties, Inc. ("Chancellor") and Lenox Condominium Association ("LCA")[1] brought this diversity action against Chancellor's insurer, Houston Casualty Company ("Houston"), seeking a declaration that Houston is obligated to defend and indemnify Chancellor in connection with the claims asserted in <u>Lenox Condo. Ass'n v. Lenox Apartments Inc. et al.</u>, No. 080100482 (C.C.P. Phila. County filed Jan. 9, 2008), now pending before the Court of Common Pleas of Philadelphia County. Houston responded with a counterclaim for a declaration that it is not obligated to defend or indemnify Chancellor against those claims, or those in a related action, <u>Lenox Condo. Ass'n v. Lenox Apartments, Inc. et al.</u>, No. 091105075 (C.C.P. Phila. County filed Dec. 2, 2009). Now before the court is the motion of Houston under Rule 56 of the Federal Rules of Civil Procedure for summary judgment on both the complaint and counterclaim.

---

1. LCA was originally designated as a defendant in this action. However, on November 17, 2010, upon agreement of the parties, we ordered LCA be named a plaintiff.

I.

On January 9, 2008, LCA filed a complaint (the "2008 Complaint") against Chancellor and co-defendant Lenox Apartments, Inc. ("Lenox Apartments") in the Court of Common Pleas of Philadelphia County. <u>Lenox Condo. Ass'n v. Lenox Apartments Inc. et al.</u>, No. 080100482 (C.C.P. Phila. County filed Jan. 9, 2008). The 2008 Complaint alleges that Chancellor acted as the agent of Lenox Apartments during the conversion by Lenox Apartments of certain real estate into a condominium, now known as the Lenox Condominium.[2] LCA, which consists of purchasers of Lenox Condominium units, asserts that Chancellor and Lenox Apartments intentionally or negligently misrepresented the physical condition of the condominium units. LCA also pleads a claim for unfair trade practices in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. Ann. § 201-2(4). In connection with the sale of the condominium units, Lenox Apartments issued a Public Offering Statement in which it described the condominium and included reports regarding the construction and condition of the building.[3] LCA maintains

---

2. Prior to its conversion, the real estate was known as the Lenox Apartments. It was owned by Lenox Apartments, Inc. with Chancellor acting as property manager.

3. Pennsylvania's "Uniform Condominium Act" requires that a Public Offering Statement include, among other things, "[a] statement containing a declaration as to the present condition of all structural components and major utility installations in the subject property, including the dates of construction, installation and major repairs if known or ascertainable, and the expected useful life of each item, together with the estimated

(continued...)

that Chancellor and Lenox Apartments failed to disclose numerous physical defects which were known to them at the time the Public Offering Statement was prepared and thereby induced members of the LCA to purchase units plagued with long-standing structural deficiencies.  The Public Offering Statement, which is incorporated by reference in the 2008 Complaint, states that Chancellor was engaged as a "full time real estate manager" tasked with providing "initial sales and marketing services" for the Lenox Condominium.

On December 2, 2009, after LCA's motion in state court for leave to amend the 2008 Complaint was denied, LCA initiated a second state-court action and ultimately filed an amended complaint therein on March 29, 2010 (the "Amended 2010 Complaint"), which repeats many of the same claims found in the 2008 Complaint.  Lenox Condo. Ass'n v. Lenox Apartments, Inc. et al., No. 091105075 (C.C.P. Phila. County filed Dec. 2, 2009).  In addition, the Amended 2010 Complaint includes claims for breach of statutory warranties under the Pennsylvania Uniform Condominium Act, 68 Pa. Cons. Stat. Ann. § 3411, breach of contract, and "piercing the corporate veil."  The Complaint names as defendants Lenox Apartments and Chancellor, as well as individual defendants Lawrence, Michael, and Robert Guzzardi (the "Guzzardi brothers"), and Eileen Haneiko ("Haneiko").  According

---

3.(...continued)
cost (in current dollars) of replacing each of the same."  68 Pa. Cons. Stat. Ann. § 3402(a)(21).

to this later pleading, Chancellor, a Pennsylvania corporation, was at all relevant times owned by the Guzzardi brothers and Haneiko, with Haneiko acting as its Chief Executive Officer, President, Secretary, and Real Estate Broker. As with the 2008 Complaint, the Public Offering Statement prepared by Lenox Apartments is attached to and incorporated in the Amended 2010 Complaint. On April 12, 2010, LCA filed in the Court of Common Pleas of Philadelphia County a motion to consolidate the two underlying state actions. This motion is still pending.

Houston declined coverage of the claims raised in LCA's 2008 Complaint. Consequently, Chancellor filed the instant action for declaratory judgment in the Court of Common Pleas of Philadelphia County, which Houston removed to this court on October 1, 2009.[4] On April 9, 2010, Houston filed an amended answer and counterclaim, to which Chancellor filed an answer on April 30, 2009.

Houston now contends that it is entitled to summary judgment on (1) Chancellor's claim for a declaration that Houston is obligated to defend and indemnify Chancellor with respect to the 2008 Complaint, and (2) Houston's counterclaim for a

---

4. Prior to Chancellor's filing its declaratory judgment action in state court, Houston had filed a declaratory judgment action in this court seeking a ruling that it had no duty to defend or indemnify Chancellor with respect to the underlying state claims. Houston Cas. Co. v. Chancellor Props., Inc., No. 09-3577 (E.D. Pa. filed Aug. 6, 2009). On November 17, 2009, upon agreement of the parties, we dismissed Houston's declaratory judgment action without prejudice and ordered the parties to proceed with the instant action.

-4-

declaration that it is not obligated to defend or indemnify Chancellor with respect to either the 2008 Complaint or the Amended 2010 Complaint.

II.

We grant a motion for summary judgment only "where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010) (internal quotation marks omitted); see also Fed. R. Civ. P. 56(c)(2). We view the facts and draw all inferences in favor of the non-moving party. Boyle v. County of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998).

The undisputed facts are as follows. Houston issued to Chancellor a Professional Liability Errors and Omissions Insurance Policy, Policy No. H707-12860 (the "Policy"), which was in force from May 24, 2007 to May 24, 2008. The Policy named Chancellor as the "Insured" and was issued on a claims-made basis. As a "claims-made" policy, it protects Chancellor only against those claims actually asserted during the life of the policy. See Consulting Eng'rs, Inc. v. Ins. Co. of N. Am., 710 A.2d 82, 85 (Pa. Super. Ct. 1998). Pursuant to the Policy, Houston agreed to:

> pay on behalf of the Insured[5] any Loss[6] and
> Claim Expenses[7] in excess of the Deductible
> amount and subject to the Limit of Liability
> as the Insured acting in the profession
> described in Item 3 of the Declarations shall
> become legally obligated to pay for Claim or
> Claims first made against the Insured during
> the Policy Period by reason of any Wrongful
> Act by an Insured ....

A "Wrongful Act" is defined as "any actual or alleged error or omission or breach of duty committed or alleged to have been committed or for failure to render such professional services as are customarily rendered in the profession of the Insured ...." The "profession of the insured," as defined in Policy Endorsement No. 1, is "[s]olely in the performance of services as a Real Estate Agent, and/or Real Estate Broker, and/or Property Manager of Non-Owned Properties, for others for a fee."

---

5. The "Insured" includes Chancellor along with (1) any "partner, executive officer, director or employee" of Chancellor "acting within the scope of their duties on behalf of [Chancellor]"; (2) any "former partner, executive officer, director or employee" of Chancellor "acting within the scope of their duties on behalf of [Chancellor]"; and (3) "[t]he estate, the heirs, assigns or legal representatives in the event of death or incompetency of any individual insured under [the] Policy."

6. "Loss" is defined in the policy as "a monetary judgment, award or settlement for damages including an award by a court of reasonable attorney's fees and costs to a party making Claim, but does not include fines, penalties or any matter uninsurable under the Law pursuant to which this Policy will be construed, nor the return of fees or charges for the services rendered or to be rendered."

7. The policy defines "Claim Expenses" as "(1) fees charged by an attorney designated by the Company and (2) all other fees, costs or legal expenses incurred in the investigation, adjustment, defense and appeal of a Claim if incurred by the Company or an attorney designed by the Company, or by the Insureds with the written consent of the Company ...."

In this diversity action, we apply the substantive law of the forum state, that is, Pennsylvania. Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78-80 (1938)). Under Pennsylvania law, an insurer's duty to defend and indemnify the insured may be properly resolved in a declaratory judgment action. Am. and Foreign Ins. Co. v. Jerry's Sport Center, Inc., 948 A.2d 834, 845 (Pa. Super. Ct. 2008). "In such actions, the allegations raised in the underlying complaint alone fix the insurer's duty to defend." Erie Ins. Exch. v. Claypoole, 673 A.2d 348, 355 (Pa. Super. Ct. 1996) (en banc) (emphasis added). A duty to defend against a third party complaint will arise "so long as it appears on the face of [the complaint] that the allegations 'may potentially come within the coverage of the policy,'" even if those claims are "'groundless, false or fraudulent.'" DecisionOne Corp. v. ITT Hartford Ins. Group, 942 F. Supp. 1038, 1040 (E.D. Pa. 1996) (quoting Heffernan & Co. v. Hartford Ins. Co. of Am., 614 A.2d 295, 298 (Pa. Super. Ct. 1992)) (emphasis added); Am. Contract Bridge League v. Nationwide Mut. Fire Ins. Co., 752 F.2d 71, 75 (3d Cir. 1985) (quoting Gedeon v. State Farm Mut. Auto. Ins. Co., 188 A.2d 320, 321 (Pa. 1963)). Where there are multiple causes of action and at least one claim could be construed as potentially falling within the scope of the policy's coverage, "the insurer [has] a duty to defend until it [can] confine the claim to a recovery excluded from the policy." Sclabassi v. Nationwide Mut. Fire Ins. Co.,

789 A.2d 699, 703 n.2 (Pa. Super. Ct. 2001). If there is no duty to defend, there of course is no duty to indemnify. See Scopel v. Donegal Mut. Ins. Co., 698 A.2d 602, 605 (Pa. Super. Ct. 1997).

Houston first contends that the underlying state claims do not even potentially fall within the scope of Chancellor's Policy. As noted above, the Policy only covers Wrongful Acts committed by the Insured while acting in the profession described by the policy. According to Houston, the underlying claims are not based on acts of Chancellor "[s]olely in the performance of services as a Real Estate Agent, and/or Real Estate Broker, and/or Property Manager of Non-Owned Properties, for others for a fee" as required by the policy, and therefore do not trigger coverage. (emphasis added).

Houston points to paragraph 17 of the Amended 2010 Complaint, which states that "Chancellor, at all relevant times hereto, acted as the agent for and in concert with defendant Lenox Apartments including carrying out all business activities undertaken for the conversion of the Lenox Apartments to condominiums." Am. 2010 Compl. ¶ 17 (emphasis added). That Complaint also identifies Chancellor President Haneiko as the "point person" for the Lenox Condominium conversion and states that Lenox Apartments used employees of Chancellor for business activities related to the conversion. Id. ¶ 19, 89. Houston contends that these allegations imply that Chancellor played a role in the conversion other than that of a "Real Estate Agent,

-8-

and/or Real Estate Broker, and/or Property Manager of Non-Owned Properties, for others for a fee," thereby placing the claims outside the scope of the policy.

The determination of the proper coverage of an insurance contract is a question of law for the court. Pac. Indem. Co. v. Linn, 766 F.2d 754, 760 (3d Cir. 1985); 401 Fourth St., Inc. v. Inv. Ins. Group, 879 A.2d 166, 171 (Pa. 2005). The primary goal of interpretation is to "ascertain the parties' intentions as manifested by the policy's terms." Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006); see also Pac. Indem., 766 F.2d at 761. When the language of the policy is clear, we give effect to its plain meaning. However, an ambiguous policy "is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage." 401 Fourth St., 879 A.2d at 171; see also Pac. Indem., 766 F.3d at 761. Policy language is ambiguous if it is "reasonably susceptible of different constructions and capable of being understood in more than one sense." Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999) (internal quotation marks omitted).

The Policy's definition of Chancellor's profession is not ambiguous. Because the Policy does not delineate the specific services "customarily rendered" by real-estate agents and/or brokers, we may consult the dictionary to determine the ordinary usage of those terms. Kvaerner, 908 A.2d at 897.

Black's Law Dictionary defines "real-estate agent" as "[a]n agent who represents a buyer or seller (or both, with proper disclosures) in the sale or lease of real property." Blacks Law Dictionary 65 (7th ed. 1999). A "real-estate broker" is defined as "[a] broker who negotiates contracts of sale and other agreements (such as mortgages or leases) between buyers and sellers of real property." Id. at 188. Pennsylvania's Real Estate Licensing and Registration Act is also instructive. It defines "broker" as:

> Any person who, for another and for a fee, commission or other valuable consideration: (1) negotiates with or aids any person in locating or obtaining for purchase, lease or an acquisition of interest in any real estate; (2) negotiates the listing, sale, purchase, exchange, lease, time share and similarly designated interests, financing or option for any real estate; (3) manages any real estate; (4) represents himself to be a real estate consultant, counsellor, agent or finder; (5) undertakes to promote the sale, exchange, purchase or rental of real estate: Provided, however, That this provision shall not include any person whose main business is that of advertising, promotion or public relations; (5.1) undertakes to perform a comparative market analysis; or (6) attempts to perform any of the above acts.

63 Pa. Cons. Stat. Ann. § 455.201.

To decide whether the underlying claims may potentially come within the Policy's coverage, we now consider the factual allegations in the underlying complaints to determine if they are premised on services performed by Chancellor as a real-estate agent and/or broker as defined above. In doing so, we do not look beyond the factual allegations actually raised in those

-10-

complaints and are mindful of the rule that the pleaded facts, and not the particular causes of action asserted, are determinative of whether coverage has been triggered.  Kvaerner, 908 A.2d at 896; Mut. Benefit Ins. Co. v. Haver, 725 A.2d 743, 745 (Pa. 1999).

In the 2008 Complaint, LCA pleads claims for negligent and intentional misrepresentation and unfair trade practices, all of which are premised on Chancellor's alleged non-disclosure of defects in the condominium units sold by Lenox Apartments to members of the LCA, and that Chancellor either knew or should have known about the defects at the time the sales took place. The 2008 Complaint alleges that Chancellor "acted as the agent for and in concert with" Lenox Apartments.  A copy of the Public Offering Statement, which is attached to and incorporated in the 2008 Complaint, states that the Guzzardi brothers engaged Chancellor in connection with the Lenox Condominium conversion project to provide services as "a full time real estate manager" and for "initial sales and marketing services."

The Amended 2010 Complaint includes claims for negligent and intentional misrepresentation and unfair trade practices, and premises such claims on essentially the same allegations as are contained in the 2008 Complaint.  It further states that the information Chancellor allegedly failed to disclose was "material to the real estate transactions between the unit purchasers and defendants."  Am. 2010 Compl. ¶¶ 39, 53 (emphasis added).  In addition, the Amended 2010 Complaint names

the Guzzardi brothers and Haneiko as defendants and details the involvement of those individuals in the Lenox Condominium conversion project.  Haneiko, the President, CEO, Secretary and Real Estate Broker for Chancellor, is described as the "point person" for the conversion project.  Furthermore, Chancellor is described as the agent for Lenox Apartments in <u>all</u> business activities undertaken with respect to the conversion project.

The Amended 2010 Complaint also raises a claim for breach of statutory warranties under the Pennsylvania Uniform Condominium Act.  According to LCA, the Act required Lenox Apartments and Chancellor to warrant that (1) there were no structural defects in components installed, work done, or improvements made by or on behalf of Lenox Apartments or Chancellor anywhere in the condominium and (2) the condominium was properly inspected for defects.  <u>See</u> 68 Pa. Cons. Stat. Ann. § 3411(c).  LCA alleges that Lenox Apartments and Chancellor violated these warranties because (1) the condominiums were in fact replete with structural defects and (2) Haneiko, acting as the agent for Lenox Apartments, instructed contractors not to obtain permits from the City of Philadelphia Department of Licenses and Inspection, and the work performed by those contractors was therefore never inspected.

Finally, with respect to its claim for breach of contract in the Amended 2010 Complaint, LCA alleges that the sales agreements between Lenox Apartments and purchasers of the condominium units incorporated a warranty that the units were

inspected for structural defects and that any defects found had been repaired.  These sales agreements were allegedly executed by Haneiko on behalf of Lenox Apartments.  According to LCA, structural defects found in the units were not repaired and defendants Lenox Apartments and Chancellor therefore breached the sales agreements.

Based on the factual allegations pleaded in the complaints, the claims for negligent and intentional misrepresentation and unfair trade practices in both the 2008 Complaint and the Amended 2010 Complaint, as well as the claim for breach of contract in the Amended 2010 Complaint, all fall within the scope of the Policy and therefore trigger coverage. As defined above, a real-estate agent or broker is essentially one who negotiates or otherwise aids in the sale of real estate between a buyer and a seller.  The factual allegations raised in both underlying complaints fit squarely within the definition of Chancellor's profession as a real-estate agent and/or broker with respect to the sale of condominium units between Lenox Apartments and members of LCA.  According to both complaints, Chancellor acted as a "real estate manager" tasked with "initial sales and marketing," and the Amended 2010 Complaint states that the misrepresentations at issue were material to "real estate transactions" between Chancellor and members of LCA.

Moreover, we find that inclusion of the underlying claims within the scope of the Policy accords with the intention of the parties.  By drafting the Policy to cover claims

pertaining to Chancellor's services as a real-estate agent and/or broker, Houston must have anticipated claims against Chancellor for misrepresentations in connection with the sale of real estate, as such claims are regularly filed in the Pennsylvania courts. See, e.g., Growall v. Maietta, 931 A.2d 667 (Pa. Super. Ct. 2007); Blumenstock v. Gibson, 811 A.2d 1029 (Pa. Super. Ct. 2002).

Houston contends that, although the marketing and sale of condominium units may fall within the category of services customarily rendered by real estate agents and/or brokers, the policy only covers claims against Chancellor based solely on its performance of such services. Houston argues that because the Amended 2010 Complaint alleges that (1) Chancellor acted as an agent with regard to all business activities undertaken for the conversion of the Lenox Apartments into condominiums (which Houston apparently presumes to include activities not customarily rendered by real estate agents, brokers, or property managers), (2) Haneiko, Chancellor's President, acted as the "point person" on the conversion project, and (3) Chancellor employees were used by Lenox Apartments to carry out the conversion, the claims in the Amended 2010 Complaint are premised on services by Chancellor other than those "customarily rendered in the profession of the insured." Thus, Houston asserts that the claims in the Amended 2010 Complaint fall outside the scope of the policy.

We reject this argument. Even if we were to assume that, at some point during the conversion process, Chancellor,

-14-

through its employees and principals, performed services other than those customarily rendered by real-estate agents, brokers, and property managers, such services are separate from the underlying claims. The wrongful actions of which Chancellor is accused in the Amended 2010 Complaint are its alleged misrepresentations in connection with the sale of condominium units to members of the LCA. Such factual allegations pertain only to Chancellor's services as a "Real Estate Agent and/or Real Estate Broker."

We note the possibility that the claim in the Amended 2010 Complaint for breach of statutory warranties under the Pennsylvania Uniform Condominium Act may fall outside the scope of the Policy, as Haneiko's alleged decision to instruct contractors to work without permits appears unrelated to the actual sale of the units and therefore does not constitute performance of services as a real estate agent and/or broker or a property manager. However, whether this one claim falls outside the scope of the Policy is irrelevant. The law is clear that, when there are multiple claims in a complaint, the insurer has a duty to defend or indemnify against the action as a whole as long as at least one claim triggers coverage. DecisionOne Corp., 942 F. Supp. at 1041; (citing Heffernan & Co., 614 A.2d at 298).

Next, Houston argues that the claims raised in the Amended 2010 Complaint are otherwise excluded from coverage. This argument is based on a provision in Policy Endorsement No. 4, which specifically excludes "any claim and claim expenses

arising out of or connected with the performance of or failure to perform services as an insurance agent, insurance broker, mortgage banker, mortgage broker, escrow agent, property developer, builder, or construction manager." According to Houston, the underlying claims in the Amended 2010 Complaint arise out of or are connected with professional services rendered by Chancellor as a "property developer, builder, or construction manager" and are therefore excluded under the policy.

It is well settled that when the facts in the underlying complaint fall within a policy exclusion the insurer has no duty to defend. See Air Prods. & Chems., Inc. v. Hartford Accident & Indem. Co., 25 F.3d 177, 180 (3d Cir. 1994) (citing Germantown Ins. Co. v. Martin, 595 A.2d 1172 (Pa. Super. Ct. 1991)). Again, the interpretation of policy language is a question of law for the court. Pac. Indem., 766 F.2d at 760; 401 Fourth St., Inc., 879 A.2d at 171. Although Chancellor's Policy does not specify those activities constituting "service as [a] property developer, builder, or construction manager," the exclusionary language is unambiguous and, in determining whether the allegations in the Amended 2010 Complaint fall within the exclusion, we will give those terms their "plain and ordinary meaning." Pac. Indem., 766 F.2d at 760-61.

In its motion for summary judgment, Houston simply declares that the claims in the Amended 2010 Complaint "plainly arise from or are connected with Chancellor's alleged performance or failure to perform services as a property developer, builder,

-16-

or construction manager."  Def.'s Br. 14.  The only factual allegation on which Houston premises this bald assertion is the single statement in that Complaint alleging that "Chancellor ... acted as the agent for and in concert with defendant Lenox Apartments including carrying out all business activities undertaken for the conversion of the Lenox Apartments to condominiums."  Am. 2010 Compl. ¶ 17 (emphasis added).  Houston further maintains that, as used in the exclusion, the terms "arising out of" and "connected with" are broad and were intended to encompass any causal relationship or other connection between the claims and the excluded services and that the allegations in the Amended 2010 Complaint are therefore sufficiently related to the excluded services to fall within the scope of this exclusion.

We will not assume, as Houston appears to do, that the phrase "carrying out all business activities" necessarily means that Chancellor performed services as a developer, builder, or construction manager.  Furthermore, even if we did assume that Chancellor performed such services, the claims in the Amended 2010 Complaint pertaining to Chancellor's alleged failure to disclose unit defects do not "arise[] out of," nor are they "connected with," the performance of such services, regardless of how broadly those terms are construed.[8]  Rather, as determined

---

8.  Pennsylvania courts have interpreted the phrase "arising out of" broadly to mean "causally connected with" in the "but for" sense.  Mfrs. Cas. Ins. Co. v. Goodville Mut. Cas. Co., 170 A.2d 571, 573 (Pa. 1961); Mildred Lampkins v. Erie Ins. Co., 9 Phila. Co. Rptr. 302, 305 (C.C.P. Phila. 1983).  Our Court of Appeals
(continued...)

above, the facts alleged in the pleadings relate solely to Chancellor's rendering services as a real-estate agent and/or broker. As such, the exclusion does not relieve Houston of its duty to defend Chancellor with regard to the Amended 2010 Complaint.

In sum, at least some of the factual allegations set forth in the 2008 Complaint and the Amended 2010 Complaint fall within the scope of the Policy and therefore trigger Houston's duty to defend Chancellor against all claims raised by LCA in the underlying litigation. Whether or not indemnity is ultimately due must await the conclusion of these lawsuits. Accordingly, the motion of Houston for summary judgment will be denied.

---

8.(...continued)
has recognized that Pennsylvania courts interpret the phrase "arising out of" as "denot[ing] 'but for' causation both where it defines what it included in coverage and where it delineates exclusions." Essex Ins. Co. v. RMJC, Inc., 306 Fed. App'x 749, 752 (3d Cir. 2009).